Argued and submitted March 14, affirmed in part,
reversed in part September 5, reconsideration denied October 19,
petition for review denied November 20, 1984 (298 Or 238)

## MYERS,
*Respondent,*

*v.*

## OREGON SHORES ASSOCIATES,
## LTD. et al,
*Appellants.*

## (CC 81-385; CA A28415)

687 P2d 159

Paul D. Schultz, Oregon City, argued the cause for appellants. With him on the brief was Hibbard, Caldwell, Bowerman, Schultz & Hergert, Oregon City.

Robert J. Miller, Sr., Beaverton, argued the cause for respondent. With him on the brief was Moomaw, Miller & Reel, Beaverton.

Before Gillette, Presiding Judge, and Warden and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is a construction lien foreclosure case. Plaintiff is the trustee in bankruptcy of the lien claimant. Defendants are the property owner and the holders of trust deeds on the property.

■　Plaintiff sought to foreclose two construction liens filed by the claimant. One, a contractor's lien, was filed in 1980. The other, a subcontractor's lien, was filed in 1981. After a court trial, a decree was entered foreclosing both liens and awarding plaintiff a judgment against the property owner for the amount claimed under the contractor's lien. Defendants appeal. We review *de novo. B & D Investment v. Petticord,* 48 Or App 345, 617 P2d 276 (1980).

Oregon Shores Associates, Ltd.'s (OSA) Seaside development needed clearing, grading and storm grade work. Plaintiff's bankrupt, Larson, dba Larson Construction Company, was selected to do the work. OSA negotiated two contracts with Larson. Larson billed OSA $225,977.33. He was paid $142,684.40. In 1980, he filed a contractor's lien:

| | |
|---|---:|
| "Labor | $ 74,474.02 |
| Materials | $ 36,406.65 |
| Equipment | $113,192.36 |
| Interest on late payments | $ 1,883.80 |
| Preparation of this lien (ORS 87.910) | $ 10.00 |
| Recording fees | $ 10.50 |
| Total | $225,977.33 |
| Less all just credits and offsets | $142,684.40 |
| Balance due claimant | $ 83,292.93" |

The parties stipulated that Larson had performed the work pursuant to the contracts.

■　The substance of defendants' first two assignments involve the listing of "Equipment" charges of $113,192.36 in the lien. Plaintiff now concedes that those charges involved the use of Larson's equipment by his own personnel.

ORS 87.010 provides in pertinent part:

"(2)　Any person who engages in or rents equipment for the preparation of a lot or parcel of land, or improves or rents equipment for the improvement of a street or road adjoining a

lot or parcel of land at the request of the owner of the lot or parcel, shall have a lien upon the land for work done, materials furnished or equipment rented.

"(3)  A lien for rental equipment under subsection (1) or (2) of this section shall be limited to the reasonable rental value of the equipment notwithstanding the terms of the underlying rental agreement."

ORS 87.035 provides in pertinent part:

"(2)  The claim of lien shall be filed for recording with the recording officer of the county or counties in which the improvement, or some part thereof, is situated and shall contain:

"(a)  A true statement of demand, after deducting all just credits and offsets."

Defendants contend that, although ORS 87.035(2) does not require that Larson segregate lienable items, once he elected to specify labor, materials and rental equipment, they were entitled to rely on the segregation shown in the lien claim.

In *Hays v. Pigg,* 267 Or 143, 148, 515 P2d 924 (1973), the Supreme Court stated:

"The general rule has been that where unsegregated lienable and nonlienable charges are lumped together in the lien as one item so that extrinsic evidence is necessary to segregate them, the right to a lien is lost as to all such unsegregated items. * * * The reason for the rule is stated in *Benj. Franklin S&L v. Hallmark,* 257 Or 436, 441, 479 P2d 740 (1971), to be the right of the owner to know from the face of the lien as filed, the amounts of valid claims which have become a charge upon his property so that he may, in advance of foreclosure, discharge the property from the encumbrance by rendering a payment without incurring the cost of litigation." (Citations omitted.)

Despite that general rule, the *Hays* court declined to invalidate a lien for the cost of erecting a prefabricated house, because the defendants were aware of defects in the house and of the plaintiff's negotiations with the supplier for credit:

"As a result, defendants had sufficient knowledge with which to question the amount of the lien to make sure they received the credit, and they would not have been prejudiced by a lack of information in settlement prior to the commencement of the suit. A simple question would have supplied

sufficient information concerning the status of the settlement." *Hays v. Pigg, supra,* 267 Or at 148.

Defendants' engineer reviewed and approved all the billings which itemized the charges for labor, materials and equipment. Defendants do not contend that they were misled or prejudiced by Larson's labeling his equipment costs as "Equipment." We conclude that defendants had sufficient knowledge to question the amount of the lien. Therefore, we hold that defendants' claim that they were entitled to rely on the segregation shown in the 1980 lien lacks merit.

■ Defendants next contend that the trial court erred in denying their motion to dismiss plaintiff's 1980 claim, because he failed to prove the reasonable value of labor, materials and equipment. Although plantiff had express contracts for his work, his claim was for the reasonable value of his work. At trial, the only evidence of reasonable value was the contracts between the parties. Defendants argue that, having filed his claim for reasonable value, plaintiff was required to prove that the charges were reasonable. On *de novo* review, we are satisfied that the evidence proves reasonable value. The trial court properly denied defendants' motion to dismiss.

■ Defendants' final assignment involves the 1981 sub-contractor's lien. While Larson was working for OSA, one Cooper contracted with OSA for underground utility work. Cooper then hired Larson as a subcontractor. Larson filed a lien claim for $3,472.04. He testified that he billed Cooper for $8,597.50 and that he received payment of $5,145.96. Plaintiff's exhibits 2 through 10 show that there were undisputed payments of $9,179.16 made on account of Larson's subcontract. Therefore, the trial court erred in decreeing foreclosure of the 1981 lien.

Affirmed as to the 1980 lien; reversed as to the 1981 lien.